IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-3141

C.D. a minor, by his father and next friend, John Doe;
F.S., a minor, by his father and next friend, Joost Schreve

    Plaintiffs,

v.

BOULDER VALLEY SCHOOL DISTRICT

    Defendant.

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, C.D, a minor, by his father and next friend John Doe, and F.R, a minor, by his father and next friend Joost Schreve, by and through their attorney, Igor Raykin of Kishinevsky & Raykin, Attorneys at Law, respectfully allege for their Class Action Complaint and Jury Demand as follows:

### JURISDICTION AND VENUE

1. This action arises under the laws of the United States and is brought pursuant to The Individuals with Disabilities Education Act 20 U.S.C. § 1400 *et seq*. ("IDEA"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). All events alleged in this Complaint occurred within the State of Colorado.

### PARTIES

3. At all times relevant to this suit, Plaintiff C.D., by his father and next friend John Doe, was a resident of the State of Colorado.

4. At all times relevant to this suit, Plaintiff F.S., by his father and next friend Joost Schreve, was a resident of the State of Colorado.

5. Defendant Boulder Valley School District is a school district located in Boulder County, Colorado.

## GENERAL ALLEGATIONS

### C.C. AND HIS INDIVIDUAL NEEDS

6. C.D. is a minor student in the Boulder Valley School District ("District" or "Defendant").

7. C.D. is a student with a disability as defined by the Individuals with Disabilities Education Act ("IDEA").

8. C.D. has an Individualized Education Program ("IEP").

9. C.D. has been diagnosed with multiple disabilities, including Down's syndrome and various intellectual and language impairments.

10. C.D. is severely impaired.

11. C.D.'s IEP indicates that C.D.'s performance in school improves when he is actively engaged in the community. As of February 2, 2020, C.D.'s IEP indicates that "[C.D.] has improved greatly in being responsible in the community and easily responds to staff reminders to stay with the group."

12. C.D.'s academic performance on his last IEP, when he was attending school in-person full time, was outstanding; he earned an "A" in all of his courses.

13. C.D.'s IEP has six goals.

14. One of the goals on C.D.'s IEP involves social-emotional wellness and is focused on transitioning from one physical setting to another physical setting.
15. It is very important for C.D. to engage in the practice of changing physical settings because such changes prepare him for future endeavors in his life. This practice cannot take place or be replicated online.
16. C.D. has worked directly and hands-on with an occupational therapist to assist him in his independent living skills. This has been a significant challenge for C.C., and he has not met his goal in this area, according to his most recent IEP.
17. Much of C.D.'s work with his occupational therapist involves manipulating objects with his hands, such as opening a can with a can opener, slicing items with a serrated knife and zipping up a zipper on his coat. This requires the type of physical, hands-on instruction that cannot be met through online instruction.
18. C.D.'s IEP has identified his highest need as follows: "community safety, communication skills, friendships and social relationships, personal care needs." Meeting these needs requires a physical presence with the community that online instruction cannot provide effectively.
19. C.D. also has a health plan due to his various medical conditions.
20. C.D. has extensive accommodations and modifications in his IEP that can only be met when he and others are physically present, rather than online.
21. C.D.'s most recent IEP indicates that he is in a special education environment 52.7% of the time while he is in school.
22. In general, C.D. needs to be physically present in school in order to make progress under the expectations of his IEP.

## F.S. AND HIS INDIVIDUAL NEEDS

23. F.S. is a student with a disability in the District.

24. F.S. has been diagnosed with low-functioning non-verbal autism.

25. F.S. is severely autistic and immensely impacted cognitively and physically.

26. F.S. receives special education and related services pursuant to a "Transfer Interim Plan" IEP, since he is a transfer student who moved to the District from California.

27. F.S.'s IEP specifies that he requires the following accommodations: access to sensory tools; object or visual schedule; frequent breaks; warning before transitions; use of reinforcers; allow student to respond with gestures; simple directions with targeted language; assistance with toileting and dressing; assistance with meals; supervision during all times of the day; and small group and 1:1 instruction.

28. F.S.'s IEP also sets the following objectives: by December 2020, given a multi-step activity (food prep activity and in job/task with steps), F.S. will complete an activity with supports of modeling, physical hand over hand, gesture prompts, as needed to complete the 5 steps with 10 or fewer prompts to complete the 5 steps; by April 2021, given a multi-step activity (food prep activity and in school job/task with steps), F.S. will complete an activity with supports of modeling physical hand over hand, gesture prompts, with 7 or fewer prompts to complete the 5 steps; by October 2021, given a multi-step activity (food prep activity and in school job/task with steps), F.S. will complete an activity with supports of modeling, physical hand over hand, gesture prompts, with 5 or fewer prompts to complete the 5 steps; by March 2021, F.S. will use gestures and object representations to request a preferred item or activity (e.g. walk, food, ball, straw) at 3 times a day for 3 consecutive weeks; by October 2021, F.S. will use

      object representations paired and/or visual representation (pictures) to request a preferred item or activity (e.g. walk, food, ball, straw) at 5 times a day for 3 consecutive weeks; by December 2020, given a physical activity task without steps (heavy work task, job task, PE activity), F.S. will continue with the task for increasing duration and fading of prompts needed for 5 minutes; by March 2021, given a physical task without steps (heavy work task, job task, PE activity), F.S. will continue with the task for increasing duration and fading of prompts needed for 7 minutes; and by October 2021, given a physical activity task without steps (heavy work task, job task, PE activity), F.S. will continue with the task for increasing duration and fading of prompts needed for 10 minutes.

29. These extensive accommodations and objectives contained in F.S.'s IEP are necessary to provide F.S. a free appropriate public education ("FAPE"). They can only be met when F.S. is physically present and cannot be met through online, remote instruction.

30. F.S.'s disability prevents F.S. from wearing a mask for an extended period of time.

31. In fact, on September 25, 2020, F.S.'s doctor wrote the following, which has been provided to BVSD: "[F.S.] is under my care as a non-verbal, autistic patient. I observed him trying to wear a mask in the office and it was on for about 10 seconds before being removed by the patient himself. This is very consistent with his family's attempts at getting him to a wear a mask as he has demonstrated repeated intolerance. His inability to wear a mask is a result of his autism and the sensory issues that go along with that. Wearing a mask during school is not a feasible endeavor for my patient and my request would be that he be able to attend school for the benefits of education and socialization while not being required to wear a mask."

32. Despite this medical advice, BVSD will not allow F.S. to attend school unless he engages in "mask training."  This simply is not possible for this disabled child.

33. F.S.'s parents have worked extensively with F.S. in an attempt to get him to wear a mask for extended periods.  Mask training would be a waste of time and would traumatize F.S.

34. F.S. currently is being denied an education because BVSD is refusing to make reasonable accommodations and modifications for this child.

35. The district is arrogantly ignoring sound medical advice and substituting its own amateur medical conclusions for the proper advice of a trained medical doctor.

**THE DISTRICT'S UNLAWFUL POLICIES AND SYSTEMIC FAILURE TO COMPLY WITH THE IDEA**

36. The District has a district-wide policy of restricting in-person instruction to a mere two days per week.

37. The District has a district-wide policy of refusing to make accommodations for students with disabilities when physically present for the limited hours of in-person instruction.  This district-wide policy prohibits making an accommodation for students with disabilities who are physically present at school whose disability prevents them from wearing a mask.

38. The district-wide policy to restrict in-person instruction to two days per week prevents the District from being able to provide students with disabilities the special education service minutes as outlined pursuant to the students' IEPs.

39. The district-wide policy to make no exceptions to the mask requirement prevents students with disabilities whose disabilities prevent them from wearing a mask for extended periods of time from being physically present for the limited two days per week if in-person instruction.

6

40. Because C.D. needs in-person instruction to receive FAPE, the district-wide policy to limit in-person instruction to two days per week denies C.C. FAPE.

41. Because F.S.'s disability prevents him from wearing a mask for an extended period of time, he cannot attend the two days of in-person instruction per week unless the District makes an accommodation to its mask requirement. The district-wide policy of not providing accommodations to its mask requirement for students with disabilities who cannot wear a mask for an extended period of time prevents F.S. from attending school in-person for the limited days of in-person instruction. Because F.S. cannot wear a mask for an extended period of time and needs in-person instruction to receive FAPE, the district-wide policy of refusing to make accommodations for students with disability who are present for in-person instruction denies F.S. FAPE.

42. These district-wide policies violate the IDEA.

43. The district-wide policies are a systemic failure to comply with the obligations of the IDEA.

44. The district-wide policies have denied C.C., F.S., and all students with disabilities FAPE and are continuing to deny C.C., F.S., and all District students with disabilities FAPE.

45. C.C. and F.S. bring this suit against the District on their behalf and on behalf of a proposed class consisting of similarly situated District students with disabilities receiving special education and related services pursuant to IEPs.

46. Because this suit alleges systemic failures and a district-wide policy that is contrary to law, the IDEA's exhaustion requirements are not applicable.

## CLASS ACTION ALLEGATIONS

47. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

48. The proposed class is so numerous that joinder of all members is impracticable.

49. On information and belief, the Boulder Valley School District serves approximately 30,000 students.

50. On information and belief there are thousands of students with disabilities who require special education and related services pursuant to an IEP in the District.

51. On information and belief, no more than 12% of the students in the district have special needs.

52. There are questions of law and fact common to the class.

53. This suit alleges district-wide policies of restricting in-person learning and requiring all students, including all students in the proposed class of District students with disabilities who require special education and related services pursuant to an IEP, to wear masks while attending the limited amount of in-person instruction with no accommodations for students with disabilities whose disabilities prevent them from being able to wear a mask.

54. This suit further alleges that the District is failing to follow the individualized aspects of IEPs as required under IDEA.  Rather than tailoring its instruction and expectations to the individual needs of special education students, as IDEA requires, the District has a one-size-fits-all approach that is hostile to the spirit and dictates of IDEA.

55. These district-wide policies apply to all class members, represent a systemic failure to comply with the obligations of the IDEA, and the policies themselves violate the IDEA.

56. Plaintiffs C.D.'s and F.S.'s claims are representative of the claims of the members of the class.  C.D. and F.S. are students with disabilities who receive special education and

8

related services pursuant to IEPs.  C.D. and F.S. have been denied FAPE because of the district-wide policies to restrict in-person instruction and to deny accommodations from the mask requirement for students whose disabilities prevent them from wearing masks for an extended time.  Their claims also are representative of all students who are currently being denied an education because the District is refusing to tailor instruction to their individual needs.

57. Plaintiffs C.D. and F.S. will fairly and adequately protect the interests of the class.  Plaintiffs C.D. and F.S. are prepared to vigorously pursue their claims through this litigation.

58. Prosecuting separate claims will create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards for the District.

59. If forced to pursue their claims individually, the resulting, possibly inconsistent adjudications could require the District to provide some in-person instruction for some students with disabilities while providing only remote, online education to others.

60. Questions of law or fact common to the class members predominate over any questions affecting only individual members.  A class action is superior to other available methods for fairly adjudicating this controversy.

61. The proposed class consists of District students with disabilities who require special education and related services pursuant to and IEP.

62. The district-wide policy to restrict in-person education to two days per week applies to all class members and denies all class members FAPE.  The district-wide policy is contrary to the IDEA and represents a systemic failure to comply with the IDEA's obligations.

9

63. The district-wide policy not to make accommodations to its mask requirements when physically present for in-person instruction for students whose disabilities prevent them from wearing a mask for an extended time applies to all class members and denies all class members FAPE.  The district-wide policy is contrary to the IDEA and represents a systemic failure to comply with the IDEA's obligations.

64. The district-wide policy and practice of taking a one-size-fits-all approach to special needs students instead of tailoring instruction and practices to the individual needs of students, as IDEA requires, applies to all class members and denies all class members FAPE.  The district-wide policy is contrary to the IDEA and represents a systemic failure to comply with the IDEA's obligations.

## FIRST CLAIM FOR RELIEF
## DENIAL OF FAPE – VIOLATION OF 20 U.S.C. § 1412

65. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

66. The District has denied Plaintiffs C.D., F.S., and all members of the proposed class FAPE.

67. The district-wide policies prevent C.D., F.S., and all other District students with disabilities who need special education and related services pursuant to IEPs from receiving the special education services, special education service minutes, and related services required by the IDEA.

68. The IDEA guarantees to all students with disabilities a FAPE, or "free appropriate public education."  This requires the District to provide special education and related services pursuant to an IEP that are reasonably calculated to enable the student to make progress appropriate in light of his or her circumstances.

69. The district-wide policies to restrict in-person instruction to two days per week and to deny accommodations to its strict and universal requirements represent a systemic failure to comply with the IDEA's obligations to provide students with disabilities FAPE. The policies themselves violate the IDEA.

70. The district-wide policies prevent deny students with disabilities the special education service, special education service minutes, and related services specified by their IEPs and necessary to provide them FAPE.

71. The District's denial of FAPE has damaged Plaintiffs and all members of the proposed class, and therefore entitles Plaintiffs and all members of the proposed class to an award of compensatory education.

## SECOND CLAIM FOR RELIEF
## DECLARATORY AND INJUNCTIVE RELIEF

72. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

73. The parties have an actual dispute. Defendant District has violated Plaintiffs' and class members' rights under the IDEA.

74. The District's policies, and continued enforcement of its policies, have denied Plaintiffs and class members FAPE, and have caused and are continuing to cause substantial, immediate, and continuing damages.

75. Plaintiffs seek an injunction barring the District from enforcing its policy of restricting in-person learning to two days per week and requiring the District to provide fully in-person instruction for students with disabilities who need special education and related services pursuant to an IEP.

76. Plaintiffs seek an injunction barring the District from enforcing its policy not to grant accommodations from its mask requirement during in-person instruction for students with disabilities whose disabilities prevent them from wearing a mask for an extended time.

77. As alleged above, these are district-wide policies, implemented and enforced by the District, and therefore, Defendant District has the authority to enforce, modify, or eliminate policies regarding in-person instruction.

78. As alleged above, Plaintiffs have demonstrated that the District's district-wide policies violate the IDEA and deprive Plaintiffs and all class members FAPE.

79. Defendant District's policies caused and will continue to cause Plaintiffs and all class members irreparable injury in the denial of their right to FAPE pursuant to the IDEA. Due to the factual allegations described above, a compensatory education award alone cannot compensate Plaintiffs fully for the harms suffered and may be difficult to quantify.

80. The grant of injunctive relief exposes no harm to Defendant.

81. Granting injunctive relief will not disserve the public interest.

82. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory judgment in their favor and against Defendant on the IDEA claim above.  Such a determination that the District's district-wide policies regarding in-person instruction violate the IDEA would serve a useful purpose in clarifying and settling legal relations in issue and will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to this proceeding.

83. Plaintiff requests declaratory judgment enter in her favor and against the Defendant that Defendant's policies as described in this Complaint violate the IDEA.

**REQUEST FOR RELIEF**

84. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

85. Plaintiffs request that the Court enter judgment in their favor and against Defendant as follows:

    a. Require the Boulder Valley School District to open up all of its schools on a full-time, five-day-per-week, in-person basis to all special needs students so that they may attend and receive their services under their IEPs.

    b. Issue a declaratory judgment in Plaintiffs' favor that the District's policies as described in this Complaint violate the IDEA;

    c. Issue an injunction prohibiting the District from its policy of restricting in-person learning to two days per week and requiring the District to provide fully in-person instruction for students with disabilities who need special education and related services pursuant to an IEP.

    d. Issue an injunction prohibiting the District from enforcing its policy not to grant accommodations from its mask requirement during in-person instruction for students with disabilities whose disabilities prevent them from wearing a mask for an extended time.

    e. Issue an injunction prohibiting the District from enforcing its restrictive policies in a universal manner against special needs students, and instead require the District to make schooling determinations on a case-by-case basis as dictated by each disabled student's individual needs.

    f. Award the Plaintiffs any additional and further relief that the Court finds equitable, appropriate, or just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 20th day of October, 2020:

/s/ *Igor Raykin*
Igor Raykin, Esq.
Kishinevsky & Raykin, LLC
2851 S. Parker Rd Suite 150
Aurora, CO 80014
Telephone: 720-767-1846
E-mail: igor@coloradolawteam.com
Attorney for Plaintiff

/s/ *Michael Nolt*
Michael Nolt, Esq.
Kishinevsky & Raykin, LLC
2851 S. Parker Rd Suite 150
Aurora, CO 80014
Telephone: 720-588-9713
E-mail: michael@coloradolawteam.com
Attorney for Plaintiff

/s/ *Alan Davis*
Alan Davis, Esq.
Kishinevsky & Raykin, LLC
2851 S. Parker Rd Suite 150
Aurora, CO 80014
Telephone: 720-523-8106
E-mail: alan@coloradolawteam.com
Attorney for Plaintiff