**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-03141-PAB-SKC

C.D. a minor, by his father and next friend, John Doe;
F.S., a minor, by his father and next friend, Joost Schreve,

    Plaintiffs,

v.

BOULDER VALLEY SCHOOL DISTRICT,

    Defendant.

---

## MOTION TO DISMISS
---

Defendant Boulder Valley School District (the "District") moves pursuant to Fed. R. Civ. P. 12(b)(1) and (6)[1] to dismiss Plaintiffs' Complaint, as follows.

### INTRODUCTION

This is a special education case alleging the District violated the Individuals with Disabilities Education Act ("IDEA") with respect to its instructional and safety practices during the COVID-19 pandemic. Plaintiffs assert two claims for relief: a claim for denial of a free appropriate public education ("FAPE") in violation of the IDEA and a claim for injunctive and declaratory relief related thereto. As explained below, Plaintiffs' claims fail for lack of jurisdiction and as a matter of law.

---

[1] Pursuant to D.C.COLO.LCivR 7.1(a) and this Court's practice standards, the undersigned certify that they conferred with opposing counsel regarding this motion, which is opposed.

## PLAINTIFFS' FACTUAL ALLEGATIONS

As it must, the District takes as true the following relevant factual allegations from the Complaint:

Plaintiffs C.D.[2] and F.S. are District students with disabilities who receive special education and related services pursuant to an Individualized Education Program ("IEP").[3] *Compl.*, p. 2, ¶¶7–8 and p. 4, ¶¶23–27. The IEPs are tailored to meet the individual educational needs of each student based on the student's current functioning and diagnoses.

### a. Individual needs of student C.D.

C.D. is identified as a student with multiple disabilities. *Id.*, p. 2, ¶9. He has Down's Syndrome and various intellectual and language impairments. *Id.* His IEP identifies needs including community safety, communication skills, friendships and social relationships, and personal care needs. *Id.* at p. 3, ¶18. C.D.'s IEP indicates his performance in school improves when he is engaged in the community. *Id.*, p. 2, ¶11. C.D.'s IEP contains six goals. *Id.*, ¶13. The purpose of one of C.D.'s IEP goals is to help him transition from one physical setting to another. *Id.*, p. 3, ¶14. C.D.'s IEP includes another goal to assist him with daily tasks such as slicing items with a knife. *Id.* at ¶17.[4] C.D.'s IEP does not state that such services must be provided in person. Ex. 1.[5]

---

[2] Although the Complaint names C.D., it occasionally refers to him as C.C. For purposes of this motion, the District will refer to C.D. as the student is identified in the case caption.

[3] An IEP is a "written statement for each child with a disability that is developed, reviewed, and revised in accordance with [the IDEA]." 20 U.S.C. § 1414(d)(1)(A)(i).

[4] The Complaint does not address the remaining four goals in C.D.'s IEP, nor does it allege that those goals cannot be implemented remotely.

[5] The Court may consider C.D.'s IEP without converting the motion to dismiss to a motion for summary judgment because it is specifically referenced in the Complaint and is central to his claims. *Pace v. Swerpaddlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

2

### b. Individual needs of student F.S.

F.S. has autism and is significantly impacted cognitively and physically. *Id.* at 4, ¶¶24–25. F.S. transferred into the District from California at the beginning of this 2020-21 school year. *Id.* at ¶26. F.S. receives special education pursuant to a Transfer Interim Plan (hereinafter referred to as F.S.'s IEP)[6] that contains accommodations and goals and objectives. *Id.* at ¶¶27–28. The accommodations to which F.S. is entitled under his IEP include access to sensory tools, visual schedules, frequent breaks, warnings before transitions, use of reinforcers, allowing him to respond with gestures rather than words, simple directions, and small group instruction. *Id.* at ¶27. His goals and objectives include completing multi-step activities with prompting including performing a job and preparing food. *Id.* at ¶28. His goals and objectives also include using gestures and objects to communicate his wants and needs and maintaining attention on a task. *Id.* F.S.'s IEP does not state that the services or goals require F.S. to be physically present in school. Ex. 2.[7]

F.S.'s disability prevents him from wearing a facemask. *Id.* at ¶30. F.S. provided a note from a doctor outlining the difficulty F.S. will have wearing a facemask and stating that it is not feasible to expect F.S. to wear a mask. *Id.* at ¶31. As part of F.S.'s IEP, the District specifically offered F.S. in-person instruction that included mask training as well as educational services identified in his IEP. Ex. 2, p. 9. Plaintiff declined the invitation. *Id.* Moreover, as Plaintiffs are well aware, the District eliminated any mask or mask training requirement for F.S. as well as other students who are unable to wear masks due to medical reasons on or about September 28, 2020.

---

[6] When students transfer to a school district from out-of-state, an interim plan is implemented to provide a student comparable services while the new school district conducts an evaluation and develops a new IEP. 34 C.F.R. § 300.323(f). The "Transfer Interim Plan" then functions as the student's IEP.

[7] The Court may consider F.S.'s IEP without converting the motion to dismiss to a motion for summary judgment because it is specifically referenced in the Complaint and is central to his claims. *Pace,* 519 F.3d at 1072.

### c. The District implements remote instruction during the COVID-19 pandemic.

The District addressed the COVID-19 pandemic by implementing a hybrid system of in-person and remote instruction for all students. In-person instruction was provided to all students two days per week, with remote instruction provided the other three. *Id.*, ¶36. Although Plaintiffs assert that they were denied a FAPE as a result of the hybrid system, Plaintiffs have not exhausted their administrative remedies under the IDEA.  *Id.* at ¶ 46.

## STANDARD OF REVIEW

A claim may be dismissed under Rule 12(b)(1) if, on its face, the complaint's allegations are insufficient to establish that the court has subject matter jurisdiction. *Hawkins v. Montoya*, 479 F.Supp.2d 1164, 1170 (D. Colo. 2007) (*citing Holt v. United States*, 46 F.3d 1000,1003 (10th Cir. 1995)). "In reviewing a facial attack on the complaint [pursuant to Rule 12(b)(1)], a district court must accept the allegations in the complaint as true." *Id.* A claim may be dismissed under Rule 12(b)(6) "either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004). "With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), described the standard that must be met as 'facial plausibility.' In this context, 'plausibility refers to the scope and degree of specificity of the allegations in the complaint.'" *Id.* "In this regard, the plaintiff must do more than articulate a set of facts that could 'conceivably' or 'possibly' give rise to a claim; he must 'nudge his claims across the line from conceivable to plausible.'" *Id.* Conclusory allegations need not be considered. *Id.*

**ARGUMENT**

Plaintiffs contend that the District failed to provide them a FAPE because full-time in-person instruction has been periodically suspended since March of 2020 due to restrictions imposed as a result of the COVID-19 pandemic and the District allegedly refused to accommodate students who could not wear facemasks. Plaintiffs' claims fail because they: (1) did not exhaust their administrative remedies; (2) have not alleged facts that, taken as true, can establish a claim for a denial of FAPE; and (3) have not alleged harm that warrants an award of the remedies they pursue.

    **a. Plaintiffs' claims must be dismissed because they have not exhausted their administrative remedies.**

        **i. Plaintiffs are required to exhaust administrative remedies under the IDEA.**

The IDEA is an equitable statute enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). The IDEA establishes extensive procedural safeguards, empowering parents of students with disabilities to challenge the adequacy of a child's IEP and the school district's delivery of FAPE. 20 U.S.C. § 1415. The process culminates in an administrative due process hearing conducted by an impartial hearing officer. 20 U.S.C. § 1415(f)-(i). Only after exhausting these due process remedies may a plaintiff bring a civil action in federal court. 20 U.S.C. § 1415(i)(2); 20 U.S.C. § 1415(l); *Fry v. Napoleon Comm. Schs.*, 137 S.Ct. 743, 748 (2017). Failing to exhaust administrative remedies under the IDEA deprives the district court of jurisdiction over a plaintiff's IDEA claim. *J.T. v. de Blasio*, 2020 WL 6748484 *42 (S.D.N.Y. 2020) (*citing Polera v. Bd. of Educ. of Newburgh Enlarged City*

*Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002)); *M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002). Additionally, where a plaintiff seeks relief that is available under the IDEA, such as Plaintiffs' claim for injunctive and declaratory relief that are based upon a denial of FAPE, the plaintiff must exhaust his or her administrative remedies regardless of whether the claim is brought under the IDEA or not. *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1227 (10th Cir. 2015) (citation omitted) (holding that "administrative remedies must be exhausted before a civil action may be filed" under "'Federal laws protecting the rights of children with disabilities,' if the plaintiff 'seek[s] relief that is also available under [the IDEA].'"); *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1064 (10th Cir. 2002); *S.B. ex rel M.B. v. Haverford Township Sch. Dist.*, 2009 WL 1657391 (holding that plaintiff seeking declaratory and injunctive relief under the IDEA was required to exhaust administrative remedies before enforcing its provisions in federal court). Though the Tenth Circuit has not ruled on whether exhaustion of administrative remedies is an issue of subject matter jurisdiction in IDEA cases, it has acknowledged that if it is, cases must be dismissed for failure to exhaust and that, even if it is not, a failure to exhaust is still grounds for dismissal unless waived by the defendant. *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1275 and 1279 (10th Cir. 2007); *McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No.11*, 488 F.3d 868, 874-75 (10th Cir. 2007); *Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 784 (10th Cir. 2013).

Here, Plaintiffs admit that they have not exhausted their administrative remedies, and the District has not waived any argument related to the exhaustion requirement. *Compl.* p.7 at ¶46. Accordingly, unless somehow excused from the exhaustion requirement, Plaintiffs' IDEA claim

and their claim for injunctive and declaratory relief, both of which are based on a denial of FAPE under the IDEA, must be dismissed.

> ii. **Plaintiffs are not excused from their requirement to exhaust administrative remedies.**

Plaintiffs argue that they are excused from having to exhaust their administrative remedies because they have alleged that the District has adopted a policy of general applicability that amounts to a systemic denial of a FAPE in violation of the IDEA. This argument fails as a matter of law.

Courts have recognized certain exceptions to the IDEA's exhaustion requirement, including when: (1) plaintiffs seek relief not available under the IDEA; (2) the pursuit of administrative remedies would be futile; or (3) a school district adopts a policy of general applicability that is contrary to the law. *Ellenberg*, 478 F.3d at 1276; *McQueen*, 488 F.3d. at 874-75. Where, as in this case, a plaintiff alleges that he is excused from the exhaustion requirement because the school district has adopted a policy of general applicability contrary to law, he must show that his challenge to the policy of general applicability "raise[s] only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important." *Id*. Exhaustion is still required unless "the underlying purposes of exhaustion would not be served." *Id*. The IDEA's exhaustion requirements serve important purposes, including: (1) allowing the development of technical issues and a factual record before court review; (2) preventing the circumvention of agency procedures established in the law; and (3) giving the educational agency the first opportunity to correct an error avoiding unnecessary judicial decisions. *Ellenberg*, 478 F.3d at 1276.

Here, Plaintiffs allege they are excused from exhausting their administrative remedies, but they do not offer any explanation of why the underlying purposes of exhaustion are not served. Moreover, Plaintiffs' allegations raise factual questions, rather than questions of law exclusively.

Plaintiffs assert that the mere fact that the District limited in-person instruction to two days a week while providing remote instruction the rest of the week constitutes a policy that is contrary to the IDEA. Plaintiffs are mistaken. When schools began closing across the country due to COVID-19, the United States Department of Education ("DOE") and the Colorado Department of Education ("CDE") issued extensive guidance on how schools should deliver special education and related services. The DOE did not excuse school districts from their obligation to provide students with disabilities a FAPE; however, the DOE explained that "school districts must provide a free and appropriate public education (FAPE) ***consistent with the need to protect the health and safety of students with disabilities and those individuals providing education, specialized instruction, and related services to these students***." Ex. 3, p. 1 (*Supplemental Fact Sheet Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities* (USDOE March 21, 2020)) (emphasis added). The DOE specifically acknowledged that a FAPE can be provided remotely, explaining that provisions of FAPE may be delivered through distance, virtual, online, or telephonic instruction. Ex. 4, pp. 3 and 5 (*Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak* (USDOE March 2020)). Additionally, the DOE emphasized that services may be effectively provided online, and "federal disability law allows for flexibility in determining how to meet the individual needs of students with disabilities." Ex. 3, p. 2. In short, as the DOE

8

acknowledged, the District's hybrid remote and in-person learning plans are not, as a matter of law, contrary to the IDEA or any law.

Moreover, Plaintiffs' claims raise questions of fact rather than only questions of law. In order to determine whether a student has been denied FAPE, a detailed factual record is required, and for that reason, an administrative hearing is necessary. *See De Blasio*, 2020 WL 6748484 at \*42 (dismissing plaintiffs' claim that they were denied a FAPE due to COVID-19 restrictions because plaintiff failed to exhaust their administrative remedies under the IDEA); *see also McQueen*, 488 F.3d at 875 (*citing Romer*, 992 F.2d at 1044). In *McQueen v. Colorado Springs School District 11*, the Tenth Circuit considered whether a plaintiff was exempt from exhausting administrative remedies because of a policy of general applicability. 488 F.3d at 875. Specifically, the plaintiff alleged that because CDE had a general policy of limiting the types of instruction students could receive through extended school year services ("ESY"), students' IEPs could not be appropriately individualized. *Id*. at 875. The Tenth Circuit rejected the plaintiff's argument, holding that plaintiff was not excused from exhausting administrative remedies because the issue at bar "still ultimately requires a determination as to whether any individual child was denied a FAPE." *Id*. The court explained that "such a determination is enhanced by the factual details of a particular child's case," and therefore required exhaustion. *Id.*

Similarly, resolving this case requires an examination of the factual details for each Plaintiff. The Complaint alleges that the Plaintiffs have been denied a FAPE as a result of the District's practice of delivering some educational services remotely during the COVID-19 pandemic. However, in order to determine whether each Plaintiff was denied a FAPE, it is critical to examine the educational services required in each IEP, how services mandated by IEPs were

9

delivered to each child and whether each child was actually denied any required services. In short, the factual details of each Plaintiff's case must be examined. *McQueen*, 488 F.3d at 875. Thus, each Plaintiff must exhaust his administrative remedies prior to filing suit.

Additionally, exhaustion is not required under the IDEA if it would be futile or if exhaustion would fail to provide adequate relief. Plaintiffs do not, and cannot truthfully, allege that either exception is applicable in this case. In determining whether a claim is futile or whether exhaustion would provide inadequate relief, "the overriding consideration is whether it is clear at the outset that the administrative procedure under the IDEA could not provide [the student] with the FAPE to which he is entitled." *Id.* at 875. As discussed above, the single fact that students receive partial remote instruction rather than full-time in-person instruction is not dispositive of whether a student receives FAPE. Moreover, there is no reason or allegation explaining why an administrative procedure would be incapable of providing the FAPE to Plaintiffs. Thus, a factual record about the Plaintiffs' specific conditions and needs is necessary to determine whether FAPE has been denied and, if so, what the appropriate remedy would be. Accordingly, neither the futility exception nor the inadequate remedies exception can excuse the Plaintiffs failure to exhaust. *Id.*

### b. Plaintiffs' allegations do not establish that either Plaintiff was denied a FAPE.

Even if Plaintiffs were excused from their exhaustion obligations, their claims still fail as a matter of law because they have not alleged facts demonstrating that they were denied a FAPE. The cornerstone of the IDEA is the IEP. *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S.Ct. 988, 994 (2017). An IEP is a "written statement for each child with a disability that is developed, reviewed, and revised in accordance with [the IDEA]." 20 U.S.C. § 1414(d)(1)(A)(i). The IDEA provides detailed procedures school districts must follow when developing an IEP, and a school

district's compliance with such procedures is crucial to the analysis of whether an IEP offers a FAPE. *See Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 205–206 (1982) (stating that "Congress placed every bit as much emphasis upon compliance with procedures"). The IDEA requires school districts to implement a student's IEP. 34 C.F.R. 300.323(c)(2). However, in order to plead a claim that a school district denied a FAPE, a plaintiff must plead facts that, taken as true, would demonstrate a material failure to implement the IEP. *I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Schs.*, 863 F.3d 966, 969–70 (8th Cir. 2017). A minor discrepancy in the implementation does not deny a FAPE. *Id*.

Here, the Complaint does not allege any procedural violations of the IDEA, nor does it make any allegations that either student's IEP is substantively deficient. Rather, the Complaint relies on conclusory allegations that "C.D. needs to be physically present in school in order to make progress" and F.S.'s access to FAPE "can only be met when [he] is physically present and cannot be met through online, remote instruction." Compl., p. 3 ¶22 and p. 5 ¶29. Of course, conclusory allegations are insufficient to establish Plaintiffs' claims and need not be considered. *Gordon v. Scott*, 113 F. App'x 321, 324 (10th Cir. 2004); *Iqbal*, 129 S.Ct. at 1949. Rather, Plaintiffs must allege facts supporting any conclusory allegation. *Id*. They do not do so. Significantly, the Complaint does not allege that Plaintiffs' IEPs require in-person schooling. In fact, the IEPs do not set forth any such requirement. Exs. 1 and 2. Nor do Plaintiffs allege any facts showing that the remote instruction combined with in-person instruction two days a week failed to meet the requirements set forth in each IEP.

The Complaint makes no effort to describe how services have been delivered to each Plaintiff during periods of remote instruction, nor does it offer any facts discussing whether it has

been successful. This omission is dispositive. For example, the Complaint notes that C.D.'s IEP contains six goals. Compl., p. 2, ¶13. Yet, the Complaint alleges that the District is incapable of working on only two such goals remotely. With respect to those two goals, the Complaint's allegations are conclusory. C.D.'s goals include transition from one physical setting to another and another goal of manipulating objects with his hands including slicing items with a knife. Comp., ¶¶14, 17. Each of these skills can be taught in a virtual environment, and the Complaint does not allege that the District has failed to teach these skills. The same is true of F.S. The Complaint alleges that he requires, among other things, access to sensory tools, visual schedules, and movement breaks. *Id.*, p. 4, ¶27. These forms of instruction can be replicated online and tools can be delivered to the homes of students if schools are closed to in-person learning. Plaintiffs fail to allege any facts showing that F.S.'s instruction regarding these matters was not provided or was ineffective. Additionally, the Complaint alleges that F.S.'s IEP includes goals of completing multi-step activities with supports. *Id.* ¶18. Again, the Complaint does not allege that these have not been implemented, nor does it allege that the District attempted to do so and failed. Rather, the Complaint relies on a conclusory assertion that it is simply impossible. For the same reasons, F.S.'s access to FAPE is not implicated even if the Court assumes the District denied F.S. entry to school for an inability to wear a mask. Because his IEP does not require in-person learning, he is not denied FAPE simply because he received instruction remotely.

Moreover, the Complaint assumes that accommodations and IEP goals must be delivered in a specific way: in person, at school. However, as explained above, the IEPs do not require in-person instruction, and the Complaint makes no allegations to the contrary. Nor is Plaintiffs' assumption valid. Federal guidance is clear that "federal disability law allows for flexibility in

12

determining how to meet the individual needs of students with disabilities" during periods of school closures due to COVID-19. Ex. 3, p. 2. Indeed, "how FAPE is to be provided *may need to be different in this time of unprecedented national emergency*." *Id.* (emphasis added). Different does not mean inappropriate or demonstrate a denial of a FAPE.

Courts addressing this exact issue during the COVID-19 pandemic have recognized that the DOE's guidance is entitled to deference, holding that "it is impossible to square the [DOE]'s contemporaneous guidance with the Plaintiffs' assertion that the City's switch to remote learning in light of the pandemic constituted a change in placement [in violation of the IDEA]," and therefore denied FAPE. *De Blasio*, 2020 WL 6748484 at *38. Moreover, the *de Blasio* court recognized that "Congress did not intend for the IDEA to apply to system wide administrative decisions," and therefore such closures did not change a student's IEP placement. *Id.* at 39 (*citing N.D. v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1116 (9th Cir. 2010)). In short, the Complaint does not state a claim upon which relief can be granted because the facts alleged do not establish that the Plaintiffs were denied a FAPE merely because their instruction was provided, in part, remotely.

### c. Plaintiffs have not pled facts that could establish entitlement to injunctive relief.

Plaintiffs seek a mandatory injunction requiring the District to (1) open schools five days per week during the COVID-19 pandemic; and (2) accommodate students who are incapable of wearing masks. A district court may order injunctive relief if it finds that the defendant violated federal law; however, if a plaintiff fails to demonstrate such a violation, injunctive relief must be denied. *See Villanueva v. Carere*, 85 F.3d 481, (10th Cir. 1996) (upholding denial of injunction where plaintiffs failed to demonstrate the merits of the discrimination claim or future potential harm).

As fully explained above, Plaintiffs' allegations are insufficient to demonstrate a denial of FAPE in violation of the IDEA, and therefore Plaintiffs are not entitled to injunctive or declaratory relief. Nor have they shown that they are likely to suffer irreparable harm. Indeed, they have not demonstrated that they have suffered harm at all. As to the issue regarding the wearing of face masks, the District eliminated the requirement that special education students wear facemasks or engage in training in September 2020. Thus, that issue is moot and does not serve as grounds for injunctive relief. *Nathan M. v. Harrison Sch. Dist. No. 2*, 942 F. 3d 1034, 1040 (10th Cir. 2019).

## CONCLUSION

For the reasons stated and authorities cited above, Defendant requests that this Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

RESPECTFULLY SUBMITTED this 4th day of January, 2021.

SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

By: *s/ Robert P. Montgomery*
Michael Brent Case
Holly E. Ortiz
Robert P. Montgomery
1120 Lincoln Street, Suite 1308
Denver, CO 80203
Telephone: (303) 595-0941
FAX: (303) 861-9608
bcase@semplelaw.com
hortiz@semplelaw.com
rmontgomery@semplelaw.com

ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the 4th day of January, 2021, a correct copy of the foregoing was filed and served via CM/ECF on the following:

Igor Raykin, Esq.
Michael Nolt, Esq.
Alan Davis, Esq.
Kishinevsky & Raykin, LLC
2851 S. Parker Rd Suite 150
Aurora, CO 80014
Telephone: 720-767-1846
E-mail: igor@coloradolawteam.com;
michael@coloradolawteam.com;
alan@coloradolawteam.com

*Attorneys for Plaintiff*

                                         By: *s/ Kathleen Schmidt*